UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY DUNN,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF ESCONDIDO, MONICA WALLACE, and DOES 1 through 25, inclusive,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:17-cv-01095-BEN-WVG<br><br>**ORDER GRANTING DEFENDANT'S SPECIAL MOTION TO STRIKE**<br><br>**[Doc. No. 13]** |

Before the Court is the Special Motion to Strike (Anti-SLAPP)[1] filed by Defendant Monica Wallace ("Wallace"). The motion is fully briefed. The Court finds the motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, Defendants Special Motion to Strike is **GRANTED**.

---

[1] SLAPP is an acronym for "strategic lawsuit against public participation." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010); *see also* Cal. Code Civ. Proc. § 425.16.

# BACKGROUND[2]

At issue is Plaintiff Tony Dunn's ("Dunn") suit against Defendants City of Escondido ("City") and Monica Wallace ("Wallace") for *Race Discrimination*, *Harassment*, *Age Discrimination*, *Retaliation*, *Breach of Contract*, *Breach of Covenant of Good Faith and Fair Dealing*, *Unfair/Unlawful Business Practices*, *Negligence*, *Negligent Infliction of Emotional Distress*, and *Slander*. (Comp. No. 1.) Dunn, a 40-year-old African-American male and member of the Escondido City Employees Association ("ECEA") was employed by City as an *Environmental Compliance Inspector*.[3] (Comp. ¶¶ 9-10.)

Dunn's Complaint alleges on August 19, 2016, Wallace, *Utilities Department Assistant*, told her supervisor, Christopher McKinney ("McKinney") *Director of Utilities*, Dunn had "gossiped" to her about him [McKinney]. Specifically, Dunn told Wallace, McKinney and Kim Silva ("Silva") *City employee*, were having an inappropriate sexual relationship. (*Id*. at ¶¶ 13-16.)

On August 24, 2016, McKinney summoned Dunn to his office to discuss Wallace's statement which he denied. Despite Dunn's denial, McKinney ordered a full investigation to confirm or disprove Wallace's claim. In accordance with McKinney's order, Matilde Hlawek ("Hlawek"), *Assistant Director of Human Resources*, hired Chuck Thomas ("Thomas") to conduct a full investigation. (*Id*. at ¶¶ 17-21.) Between August 25, 2016, and October 12, 2016, while the investigation was underway, Dunn alleges Thomas, McKinney, Helen Davies ("Davies"), *Environmental Programs Manager*,

---

[2] The following overview of the facts are drawn from the allegations of Plaintiff's Complaint. The Court is not making findings of fact. The allegations relevant to the motion are detailed in the analysis.

[3] In 2010 and 2012/13, prior to the events of this suit, Dunn filed complaints with the Equal Employment Opportunity Commission ("EEOC") alleging harassment and discrimination claims against City for events that occurred in the course of his employment. (*Id*. at ¶¶ 10-11.)

2

3:17-cv-01095-BEN-WVG

Hlawek and other unknown City employees conspired to corroborate false claims against Dunn alleging he was hostile, disrespectful, and often insubordinate of City's "Personnel Rules and Regulations." (*Id*. at ¶¶ 22-23.)

Believing he was being treated unfairly by City, in October 2016, Dunn filed renewed complaints with the California Department of Fair Employment and Housing ("DFEH") as well as the EEOC alleging discrimination and harassment. On November 30, 2016, Dunn discussed his recent EEOC complaint with Hlawek.[4] On December 12, 2016, Dunn was suspended for five working days by Davies for an adverse employment action. (*Id*. at ¶¶ 25, 28, 33.)

In December 2016, the DFEH issued a notice of right to bring a civil action in response to the complaint. Dunn filed his claim for damages which City rejected by letter dated March 27, 2017. On May 11, 2017, the EEOC issued a notice of right to bring a civil action in response to the complaint. (*Id*. at ¶¶ 34-37.) On May 29, 2017, Dunn filed a Complaint seeking Damages for ten causes of action. (Doc. No. 1.) The Eighth Cause of Action for Negligence and Tenth Cause of Action for Slander apply to Wallace and are the subject of this Special Motion to Strike ("Strike"). (Doc. No. 13.) Wallace seeks dismissal of all pending claims against her. (*Id*.) Wallace believes Dunn's suit against her and City is aimed at chilling the speech of not only her but also the speech of any other City employees that might dare to report misconduct by him. (*Id*.) Dunn filed a Response to the motion (Doc. No. 18) and Wallace filed a timely Reply (Doc. No. 19).

///

///

///

---

[4] At all relevant times, there was an ECEA Memorandum of Understanding ("MOU") in place, which set forth rules and procedures for the making of complaints by City employees. According to these rules, failure to comply with the complaint rules and procedures bars further consideration of the complaint. (*Id*. at ¶ 30.)

# LEGAL STANDARD

"California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that 'masquerade as ordinary lawsuits' but are intended to deter ordinary people 'from exercising their political or legal rights or to punish them for doing so.' " *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003)). Specifically, the anti-SLAPP statute provides that any "cause of action against a person arising from any act of that person in furtherance of that person's right of … free speech … in connection with a public issue shall be subject to a special motion to strike unless the court determines that the plaintiff has established that there is a probability that [he or she] will prevail on the claim." Cal. Civ. Proc. Code § 425.16.

In ruling on an anti-SLAPP motion, the Court engages in a two-step process.[5] "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010). If the defendant succeeds in doing so, the burden then shifts to the plaintiff to establish a "reasonable probability" of prevailing on the defamation claim. *Batzel*, 333 F.3d at 1024. That is, "plaintiff must demonstrate that the complaint is both [1] legally sufficient and [2] supported by a sufficient prima facie

---

[5] To prevail on such a motion, Defendants must make "a threshold showing" that the challenged cause of action, in fact, arises from an act in furtherance of Wallace's First Amendment rights. *Gallanis-Politis v. Medina*, 152 Cal.App.4th 600, 609 (2007). The statute defines these acts to include: (1) any written or oral statement or writing made before a legislature, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest. C.C.P. § 425.16(e).

showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Hilton*, 599 F.3d at 903 (citing *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002)).[6] "The applicable burden 'is much like that used in determining a motion for nonsuit or directed verdict, which *mandates dismissal when no reasonable jury could find for the plaintiff.*' " *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 599 (9th Cir. 2010) (citation omitted) (emphasis added). Notably, the court "does not weigh the credibility or comparative probative strength of competing evidence." (*Id.*)

"[W]hile the inquiry on the motion to strike may glance at the merits, its central purpose is to provide an added statutory protection from the burdens of litigation that is unavailable during the ultimate merits inquiry." *Makaeff*, 736 F.3d at 1185. In other words, "the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, 'no reasonable jury could find for the plaintiff.'" *Makaeff*, 715 F.3d at 261 (quoting *Metabolife Int'l, Inc. Wornick*, 264 F.3d 832, 840 (*9th* Cir. 2001)). If, however, "the court denies an anti-SLAPP motion to strike, the parties continue with discovery."[7] *See* § 425.16(g).

---

[6] "Such [a] test is similar to the one courts make on summary judgment, though not identical. Thus, if a plaintiff has stated a legal claim but has no facts to support it, a defendant could prevail on an anti-SLAPP motion, though he would not have been able to win a motion to dismiss." *Hilton*, 599 F.3d at 902. "To evaluate an anti-SLAPP motion, the court must 'consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " *Doe v. Gangland Prods.*, 730 F.3d 946, 953 (9th Cir. 2013) (quoting Cal. Code Civ. Proc. § 425.16(b)(2)).

[7] Once the plaintiff's case has survived the motion, the anti-SLAPP statute no longer applies and the parties proceed to litigate the merits of the action." *Batzel*, 333 F.3d at 1024.

# DISCUSSION

## I. The Anti-SLAPP Statute Applies because Plaintiff's Claim Arises from Acts in Furtherance of Wallace's Free Speech Rights.

As an initial matter, the Court must determine whether Wallace can satisfy her burden of demonstrating the challenged causes of action arose from a protected activity. The Court finds that the challenged activity forming the basis of Dunn's claims is Wallace's statement to McKinney – a statement made "in furtherance of … [her] free speech" rights and "in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1).

The anti-SLAPP statute "is to be construed broadly." *Hilton*, F.3d at 902. Pursuant to the statute, an act made "in connection with a public issue" includes:

> [A]ny other conduct [by the defendant] in furtherance of the exercise of the constitutional right … of free speech in connection with a public issue or an issue of public interest. [*id*. at § 425.16(e)(4)].[8]

In particular, subsection (e)(4) extends the statute's protection to any conduct made "in furtherance of the exercise of the constitutional right … of free speech in connection with … an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(4). Here, the topic of Wallace's claim relates to a "public issue or an issue of public interest" under subsection (e)(4). Plaintiff's suit against Wallace is aimed at chilling the speech of not only Wallace but also the speech of any other City employees that might dare to report misconduct by him. (Strike at 7.) "Interpreting the California Supreme Court's

---

[8] California Courts have long recognized that private communications may receive protection under Cal. Code Civ. Pro. § 425.16(e)(4) – so long as those private communications are made in connection with an issue of public interest. *See e.g., Terry v. Davis Community Church*, 131 Cal. App. 4th 1534, 1546 (2005) ("We conclude subdivision (e)(4) applies to private communications concerning issues of public interest."); *Ruiz v. Harbor View Community Assn.*, 134 Cal. App. 4th 1456, 1467 (2005) ("Section 425.16, therefore, governs even private communications, so long as they concern a public issue."); *Wilbanks. v. Wolk*, 121 Cal.App.4th 883, 897 (2004).

pronouncements, [the Ninth Circuit has] 'construe[d] "public issue or public interest" … broadly in light of the statute's stated purpose to encourage participation in matters of public importance or consequence.'" *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016) (quoting *Hilton*, 599 F.3d at 906) (second alteration in original). Notably, the California Supreme Court has "declined to hold that [the anti-SLAPP statute] does not apply to events that transpire between private individuals." *Hilton*, 599 F.3d at 905 (quoting *Navellier*, 29 Cal.4th at 91). Furthermore, "the activity of the defendant need not involve questions of civic concern; social or even low-brow topics may suffice." (*Id.*)

In conducting the relevant "public issue" analysis, the Ninth Circuit has relied upon two decisions of the California Courts of Appeal: *Rivero v. Am. Fed'n of State*, *Cnty., & Mun. Emps.*, 105 Cal.App.4th 913 (2003) ("*Rivero*") and *Weinberg v. Feisel*, 110 Cal.App.4th 1122 (2203) ("*Weinberg*"). As the Ninth Circuit explained in *Sarver*:

> The California Court of Appeal for the First District has identified "three categories of public issues: (1) statements 'concern[ing] a person or entity in the public eye'; (2) 'conduct that could directly affect a large number of people beyond the direct participants'; (3) 'or a topic of widespread, public interest.' " [*Hilton*, 599 F.3d at 906 (quoting *Rivero*, 105 Cal.App.4th at 924-25)]. California's Court of Appeal for the Third District has explained that "'public interest' does not equate with mere curiosity," but instead "a matter of public interest should be something of concern to a substantial number of people." [*Weinberg*, 110 Cal.App.4th at 1132-33.]

*Sarver*, 813 F.3d at 901.

Applying the *Rivero* standard, the Ninth Circuit in *Hilton* found a greeting card company's use of celebrity Paris Hilton's catchphrase in a birthday card to constitute speech "in connection with a public issue or an issue of public interest" because there was "no dispute that Hilton is a person 'in the public eye' and 'a topic of widespread, public interest,' and that she was such well known before this controversy." *Hilton*, 599 F.3d at 907. The court also noted that Hilton's career is "something of concern to a substantial number of people" and is, therefore, a matter of public interest, even under *Weinberg's* more restrictive standard. (*Id.*)

An issue of public interest within the meaning of section 425.16 "*is any issue in which the public has an interest.*" *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1042 (2008) (emphasis in original). The issue "need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest."[9] (*Id*.) The Anti-SLAPP statute does not require that the asserted public interest be the subject of a *live* debate or discussion. Thus, the Court makes little of Dunn's claim that the "statement did not concern any *ongoing* debate or controversy requiring participation by others." (Opp'n Strike at 9.)

Wallace claims the statement at issue is one of "public interest" because it concerns matters that directly impact the proper functioning of the City's Utilities Division. (Strike at 7.) Specifically, it is the employment and promotional practices of the Utilities Department director. (Strike Opp. at 2.) The fact that City promptly retained an outside third party to investigate the veracity of her report is evidence of the potential negative ramifications that could occur if the rumor was left unchecked and allowed to fester. (*Id*. at 8.) Much like Makaeff's statements about Trump University, Wallaces' statement constituted an attempt to bring to light an unfounded rumor about her coworkers, so that they could be addressed and resolved quickly. Bringing the rumor to the attention of McKinney, the director, and her supervisor, was appropriate. Upon being placed on notice of the rumor, City responded appropriately by hiring an independent third party to investigate the rumor and aggressively deal with the issue before it had a deleterious effect on the working environment of the Utilities Division. Under these circumstances, the Court finds Wallace's statement regarding Dunn's false allegations against City employee McKinney (accusing him of exchanging job promotion in exchange for sexual favors), properly falls within the anti-SLAPP statute under category

---

[9] It is sufficient that the speech act in issue address a *latent* matter of public interest, such as the public's general and enduring interest that those charged with protecting their safety can be relied upon when duty calls.

four: "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *See id.* § 425.16(e)(4).

Dunn contends that Makaeff is inapposite because this dispute "is inherently private" and involves a "narrow dispute concerning a small, specific audience." (Strike Opp. at 8.) Specifically, Dunn argues that Wallace's statement does not (1) concern a person in the public eye, (2) concern conduct that could directly affect a large number of people, or (3) concern a topic of widespread, public interest. The statement was, "at best, a matter of concern to Monica Wallace and a very small, specific audience: Christopher McKinney." (*Id.*) To put it simply, "a dispute among a small number of people in a workplace does not implicate a broader public interest subject to a motion to strike under section 425.16, subdivision (e)." *Olaes v. Nationwide Mutual Insurance Co.*, 135 Cal.App.4th 1501, 1511 (2006); *but see, Donovan v. Dan Murphy Found.*, 204 Cal. App. 4th 1500, 1510 n.4 (2012) ("Conduct involving homeowners associations generally involves a matter of public interest because a homeowners association is akin to a governmental entity.").

The Court agrees with Wallace. The City of Escondido Utilities Department is a public agency charged with the critical task of protecting the public's safety, health, and property by providing safe drinking water, sewage processing, and local reservoir management. Every citizen of Escondido, and indeed, the many other individuals who patronize Escondido's businesses, restaurants and local attractions benefit from and rely on the services the Utilities Department provides. It is a matter of public interest whether Escondido *has* a Utilities Department. It is a matter of public interest whether the Utilities Department carries out its duties in a lawful manner.[10] It has to follow then, that

---

[10] City of Escondido Utilities Department operates four Divisions (*Lakes Division*; *Environmental Programs Division*; *Wastewater Division*; *Water Division*) providing the following essential services: The Utilities Water Division operates water treatment

9

Wallace's statement to McKinney, who is her supervisor and director of the Utilities Department, spoke precisely to this point and would undoubtedly be of interest to the residents of Escondido if determined factual.

The Court concludes that under California law, Wallace's statement to McKinney constitutes an act made in furtherance of Wallace's free speech rights and "in connection with a public issue" under subsection (e)(4) of the anti-SLAPP statute. For these reasons, the alleged defamatory statements meet the first step of the anti-SLAPP inquiry. The Court proceeds to determine whether the plaintiff has demonstrated a probability of prevailing on the merits.

## II. Probability of Success

Because Wallace has sufficiently demonstrated the challenged cause of action arose from a protected activity, the burden shifts to Dunn to establish a probability of prevailing on the merits of his Negligence (Eighth Cause of Action) and Slander (Tenth Cause of Action) claims. Unfortunately, Dunn rests the fate of his claims on the first step of the inquiry. Dunn offers nothing for the second step of the inquiry. He offers nothing to establish legally or factually his claims of negligence and slander. Therefore, the claims will be stricken.

To establish a probability of prevailing on a claim, a plaintiff must "make a prima facie showing of facts which would, if credited, support a judgment in his favor." *Conroy v.* Spitzer, 70 Cal.App.4th 1446, 1451 (Cal.Ct.App. 1999). A section 425.16 anti-SLAPP motion, like a summary judgment motion, "pierces the pleadings and requires an evidentiary showing." *Simmons v. Allstate Ins. Co.*, 92 Cal.App.4th 1068, 1073 (Cal.Ct.App. 2001). "To determine whether the plaintiff has made this showing, the

---

facilities and the distribution system to ensure that high-quality water is delivered at the most economical costs. The Utilities Wastewater Division oversees treatment and reclamation operations, oversees the industrial and commercial pretreatment program, operates the Hale Avenue Resource Recovery Facility (*HARRF*), and maintains the sewer collection systems and sewage lift stations.

court considers the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Graham-Sult*, 756 F.3d at 740-41 (citing Cal. Civ. Proc. Code § 425.16(b)(2)) (internal quotations omitted). "Under this standard, the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, no reasonable jury could find for the plaintiff." *Makaeff*, 715 F.3d at 261 (citing *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)) (internal quotations omitted).

As mentioned, Dunn presents no evidence to establish the probability he will succeed on his negligence or slander claims. He provides no evidence in support of his opposition to Wallace's Special Motion to Strike. Short of citing to four cases he alleges illustrates an anti-SLAPP motion is inappropriate to these facts, he offers no cases to show Wallace had a legal duty or breached that duty. He offers no evidence of Wallace's actual statement or the falsity of her statement. He includes no documents, no declarations, no deposition testimony, and no analysis. He does little more than put forth a threadbare conclusion for each claim insinuating the motion to strike should be denied.

A.  Negligence

The elements of a negligence claim are "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach is the proximate and legal cause of the resulting injury." *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917, 50 Cal.Rptr.2d 309, 911 P.2d 496 (1996).

In this case, Dunn alleges that Wallace had a duty to refrain from reporting untrue and inaccurate information which Wallace breached when she reported to McKinney what Dunn allegedly said to her about him [McKinney] and Silva. (Comp. ¶ 82-83.) But Dunn cites no decision or statute that holds Wallace had such a duty or that Wallace made an untrue report. Dunn also alleges reporting of untrue and inaccurate information to McKinney caused harm to Dunn. (Id. ¶ 84-85.) But Dunn offers no evidence of either harm or a causal connection. The Court concludes that Dunn has not proven a probability of succeeding on the negligence claim.

B. <u>Slander</u>

Civil Code section 46 provides, "Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which: (1) Charges any person with a crime, or with having been indicted, convicted, or punished for crime; (2) Imputes in him the present existence of an infectious, contagious, or loathsome disease; (3) Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits; (4) Imputes to him impotence or a want of chastity; or (5) Which, by natural consequence, causes actual damage." (*see* Civ. Code, § 46.)

A slander that falls within the first four subdivisions of Civil Code section 46 is slander per se and require no proof of actual damages. *Mann v. Quality Old Time Service, Inc.*, 120 Cal.App.4th 90, 107 (2004). A Slander that does not fit into those four subdivisions is slander per quod, and special damages are required for there to be any recovery for that slander. (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §§ 552–555, pp. 807–814.) One authority has stated that unlike libel, which is per se when defamatory on its face (see Civ. Code, § 45a), "[t]he extrinsic fact issue is irrelevant" for slander in connection with the per se and per quod distinction. (2 Smolla, Law of Defamation (2d ed.2008) § 7:25 at p. 7–34; *see Correia v. Santos*, 191 Cal.App.2d 844, 852–853 (1961).

Dunn appears to bring his slander cause of action solely on a per se theory under subdivision (3) of Civil Code section 46. As discussed above, with respect to his claim under subdivision (3) of section 46, a false and unprivileged oral publication is slander per se when it "[t]ends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to

his office, profession, trade, or business that has a natural tendency to lessen its profits." (Civ.Code, § 46, subd. (3); 5 Witkin, supra, Torts, §§ 552–553, pp. 807–809.)

As with the negligence claim, the Court notes that Dunn has not met his burden of demonstrating a probability of prevailing on his slander claim.

## COSTS & FEES

A prevailing defendant on a motion to strike "shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1). Wallace, however, did not submit any information regarding the costs and attorneys' fees incurred in bringing the instant motion. Accordingly, the Court **DEFERS** ruling on Wallace's request for attorneys' fees and costs at this time. Wallace may file a supporting declaration of counsel outlining the basis for the fees and costs incurred within seven (7) days of this order.

## CONCLUSION

Because Dunn has not established a probability of prevailing on his Negligence and Slander claims, Dunn has not met his burden under the second prong of the anti-SLAPP analysis. Accordingly, the Court **GRANTS** Wallace's anti-SLAPP motion. The Eighth claim (for negligence) and the Tenth claim (for slander) are hereby stricken from the Complaint.

**IT IS SO ORDERED.**

Dated: March 29, 2018

Hon. Roger T. Benitez
United States District Judge